United States v. Lacona 25-1033. Defense counsel will make their appearance and then proceed, please. Good morning, your honors. May it please the court. My name is Chassika Su and I represent the appellant Charles Lacona. The primary issue in this appeal is that Mr. Lacona was convicted of a crime with which he was not charged. It's clear that the government was concerned about its federal jurisdiction from the outset. Instead of alleging and proving that the application and loan proceeds cross state lines, they argued somewhat unconventionally that the SBA's payment alone processing fees constitute interstate wires. And more importantly, to establish an interstate nexus for money laundering, the government put on evidence showing the Cadillac Mr. Lacona purchased in Colorado actually came from Michigan. But nothing in the indictment notified Mr. Lacona of this. The indictment does not allege the Cadillac had out-of-state origins or provide any allegation about how his purchase of the Cadillac crossed state lines. You're talking about the money laundering transaction? That's right, your honor. Well, it says monetary transaction and monetary transaction is defined in the statute as an interstate transaction. So why isn't that sufficient to be on notice that it is an interstate transaction? The indictment says monetary transaction. That's a fair question, your honor. And I know that's an argument that the government raised. But that, you know, using the word, the magic words monetary transaction doesn't establish that Mr. Lacona was on fair notice of charges against him or on notice. And why does it why does it not? Because our case law and that would seem to apply to this situation is case law that says that ordinarily all you have to do in the indictment is list the elements of the statute. You don't have to do you don't have to have a speaking indictment. You don't have to define the terms in the indictment. You just have to say this is what you're charged with. I assume you're familiar with that case law, right? That's right, your honor. The problem, though, is here is that county is completely silent about the jurisdictional nexus. They didn't have to lay out every single detail. But the indictment, for instance, doesn't expressly incorporate or reference the statutory definition. If it is defined, if it is defined monetary transaction, are you saying you wouldn't be making this argument? That's right, your honor. If it had said simply monetary transaction in affecting interstate commerce. Okay, let's go with the first part. Let's go with the first part. If we if it had defined monetary transaction, you wouldn't be making this argument. What what authority do you have that suggests that every term and I'm talking about critical terms now, jurisdictional terms, let's just narrow the focus there have to be defined. I mean, it is a term of the statute. And Mr. Lacona can go look at the statute through his and find out what that term means. What why is anything more required? Well, that's I mean, I think under this circuit's case law, you know, you've said again and again, that indictments are supposed to be read using ordinary English and common sense, because its ultimate purpose is to notify defendants of the crimes charged. Mr. Lacona is not a lawyer. He's not going to understand that, you know, USC section 1957 F1 as incorporating in or affecting interstate or foreign commerce. He knows he's charged with 1957. And in in 1957, monetary transaction is an internet means and interstate transaction. And I and I didn't hear the answer to my question. What K what is your best case that says that this argument has any legs at all? I think it would be the more general case I would cite in our opening brief about how indictments need to be, you know, read in ordinary English and common sense. OK, let me let me focus in on count. I think it's two and three. Those are the wire fraud counts, I believe, and those counts relate to I think your argument was in part that there was no evidence. Well, that it was unusual one that they chose to use the lending fees for purposes of showing an interstate nexus. But and then I think in your argument was that, in fact, the completion of the scheme took place. I took this your brief when the completion of the scheme took place after the first wire, right? That's right. OK, the deposit of the money in the bank. That's right, your honor. So counts one and count two are the wire fraud counts. OK. And I'm sorry I said count three, but OK, one and two. We've got that. Well, if the if there were two applications for PPP loans, how could the completion of the scheme have taken place when the money hit your client's bank on the first loan? There were two applications. So why would the scheme be over? Well, we respectfully submit that these were two separate schemes under United States v. Redcorn. Once the funds are deposited, the scheme is complete and any subsequent enjoyment, his spending of it is just, you know, using his ill-gotten gains. It's not necessarily a continuation of the scheme. But that's not what that's not what the government charged in one and two. It's not talking about him going on a prologue. What what it's what it's talking about. Let me let me posit it this way. It would seem that it has to be essentially in furtherance of an essential component of the scheme. Well, the bank getting lending fees, if the bank didn't get lending fees, he gets no PPP money. Right. The bank is not going to fund the PPP money if they if they don't get lending fees. Right. Right. Well, then why is that not an essential part of the scheme that, in fact, the bank that this transaction take place with the SBA and the Treasury so he gets his money? Yeah, I mean, on our appeal, our argument is I think that was advocated very strenuously by defense counsel and in the lower court. I think our position here on appeal is that it wasn't reasonably foreseeable to Mr. Lacona that, you know, that that the SBA loan processing fees would come out of state, you know, when all of his interactions were with in-state bank folks. Well, what is your argument? Is your argument here? If I just heard you correctly, your argument here is different than your argument in the district court. So you're you're operating under plain error. Is that right, Ben? Off of the. What we're talking about is count one and two and what the interstate commerce component of that is. And I was asking you about the notion that that it would have been a part of this of his wire fraud scheme, that that it would have been part of the completion of the scheme. The wire would have been an essential part of the scheme or in furtherance of an essential part of the scheme that the lending fees were paid. Your response, as I understood it, was, well, we're not focusing on that. That was what they argued below. That's what we're focusing on. What we're focusing on is whether the interstate wire was reasonably foreseeable. And so my follow up question is, if you're making a different argument than was made below, then if you don't invoke plain error, you've got a problem. Yeah, your honor. Sorry. Sorry if I was unclear about this. The Defense Council below did emphasize that it wasn't an essential part of the scheme, but they also raised the argument that it wasn't reasonably foreseeable. And that just happens to be the argument on appeal that we are emphasizing. And let's talk about that for a second. South Dakota Bank. Federal government loan. It is clear that that that that loan is going to have to be funded in some way in connection with the federal government. Why isn't it reasonably foreseeable that at some point along the line? I know it was a Denver branch of the South Dakota Bank, but it's a South Dakota Bank. It's a PPP loan and and it's the SBA branch in Denver, but the SBA is also in D.C. Why isn't it conceivable, entirely foreseeable that somewhere in that transaction there's going to be an interstate wire and what and to that point, just give me your best case on that. Yeah, your honor. I mean, I think everyone that Mr. Lacona was dealing with was in Colorado. I it's main offices in South Dakota. But when he applied, his loan application was submitted to his local bank. I think the evidence suggests, and I don't think the government has argued otherwise, that the actual funding of the money was kind of transferred intrastate, which is probably why they're relying on the loan processing fees. There is just nothing to suggest that that would make it reasonably foreseeable for Mr. Lacona to believe that this would have been an interstate wire communication. Well, let me back up one second, because this whole dialogue presupposes that that actually is a legal requirement. I mean, where is the basis for it being a rehab? You have to have reason. It has to be reasonably foreseeable. If I understand you correctly, when a reasonable foreseeability in this context goes to the interstate nature of the wire. Right. That's right. And what basis is there to believe that's true? I mean, you cited two cases in your brief. I looked at those two cases and what those two cases related to is it's reasonably foreseeable that there was something somebody caused an interstate transaction to take place. That is different, it strikes me, from the question of whether it's reasonable, reasonably foreseeable that there was an interstate transaction. Those seem to be two different things. I mean, that could have just been my inartful arguing, Your Honor. I mean, I think our position is that it's not reasonable foreseeable to Mr. Lacona that he caused an interstate wire. And where would that be? Where would that be the law? I mean, why is that the law? I mean, what are the best cases, the two cases you had in your opening brief? Yes, Your Honor. The PRA versus United States 347 U.S. 1 and United States v. Andrews 681 F3D 509. In Pereira, as I understand it, and tell me if I'm misreading it, that it has to be reasonably foreseeable that there would be an interstate communication. Is that your understanding of Pereira? Yes, Your Honor. So then, and as I understand it, your argument is, well, not whether or not Mr. Lacona actually foresaw it or actually foresaw that there were going to be these particular transmissions from the South Dakota Bank, et cetera. But the hurdle I think that you're owning up to, as I understand it, is that the standard is whether or not a fact finder could reasonably foresee that there would be an interstate communication somewhere. And as long as there is, if someone could reasonably foresee, for example, that there would be a transmission from the home bank to the branch bank, then I think you're acknowledging that you couldn't prevail under that scenario. Your argument is that you couldn't reasonably foresee that there'd be any interstate communication. Is that? That's right, Your Honor. Thank you. Is that, are you saying that, I mean, objectively, I'm not sure how you can possibly get that. I mean, he himself, he used an online app, he used DocuSign to do a supplemental documentation, he communicated via email. The bank, TCF, listed its location on the promissory note as South Dakota. You know, I mean, objectively, how could he not understand there would be interstate communications? And he put those in motion. He didn't have to know the details. All he had to do was put it in motion and reasonably foresee it. Yeah, I mean, I think, I mean, his use of the internet alone is insufficient. And I think, you know, all those factors are important, but we would be speculating about that. He didn't just use the internet. He created and signed using DocuSign, an online document. That's different than the case that you cited, where they were literally just looking at internet on a website. He didn't just use, didn't view the internet. He affirmatively utilized it for transmitting documents and signatures. That's different than these cases that you cited. Right, but I mean, respectfully, I don't think using DocuSign necessarily implicates... Again, you're looking at things subjectively. I'm saying objectively, all he had to do was put it into motion. Let me, let me ask another question going back to count three. I think there's a significant preservation issue there. You didn't argue for plain error and you didn't make this point you're making now below. And the government pointed out, I'm trying to remember, in something pre-appeal, the government pointed out, was it the bill or the... At some point, they pointed out that this would be a point. Yeah, they pointed out very specifically, this would be a plain error issue because you didn't, you didn't raise this constructive amendment argument that you're making now below. So, you had every reason to understand that this would be plain error that we would be looking at, but you didn't argue it in your initial opening brief. Yes, I'm running out of time, but I respectfully request leave to just answer. Of course, answer. We disagree with the government on whether this issue was properly preserved. I think we've, in our acquittal motion, we raised several times issues with constructive amendment and... On count two, but not on count three. You didn't raise it on count three. We also raised the issue, the fact that the indictment was completely silent on count three for federal nexus. And even if that's not the same as arguing constructive amendment, which is what you're arguing now. I mean, and even if the court, even if we were to take it as true, which we don't concede, this court has discretion to review the issue under plain error. And a constructive amendment is reversible per se, because it affects a defendant's substantial rights. And so we'd argue alternatively, even under the plain error standard, you know, that the court reverse. All right. Thank you. Okay. Any other? Okay. Thank you, counsel. We'll hear from the government then. Thank you, your honor. Kyle Brenton on behalf of the United States. I'll just start right in on the waiver of this constructive amendment on count three arguments. If you look to what Mr. Lacona argued in his motion for acquittal below, he argues that there was a constructive amendment of the wire fraud counts, counts one and two. And I mean, generously, he argues that. I think it's pretty sparse in that motion, even as the wire fraud counts. He in fact lists those by number note eight of his motion on page 728 of volume one, but not count three. So there was no argument made. He did make a separate sufficiency argument as to jurisdictional nexus on money laundering, but that's not the same argument. And to the extent he points to the district court's order saying, oh, it talked about interstate nexus and money laundering, that was addressed to the sufficiency point, not the constructive amendment arguments. Well, can I probe that a little bit, Mr. Bretton? Now, it seems to me that defense counsel is certainly arguing that there was a constructive amendment on count three, the money laundering count, but it seems to me that there are significant parts of a brief that are questioning the existence of an interstate nexus for jurisdiction, the sufficiency of the indictment on the money laundering count. And it seems to me that you're acknowledging that that was what she had argued in district court, but isn't that also part of her argument to us today, the sufficiency of the indictment on the internet, on the interstate jurisdictional requirement on money laundering? Well, your honor, I don't agree with that. I believe that Mr. Lacona, I think we have to look carefully at the arguments he's making here. I think on count three, he is arguing that there was a constructive amendment that occurred because the indictment did not contain factual allegations of an interstate commerce nexus and the evidence that trial did. So that's his first argument. His second argument is a sufficiency argument about the sufficiency of the evidence of jurisdictional interstate commerce nexus on the wire fraud counts as to counts one and two. So I think that's his second argument. Then we have his constructive amendment argument about a scheme on the wire fraud counts again. Then we have prosecutorial misconduct and then the question of whether the money laundering counts can survive if the wire fraud counts fail. Those are the arguments I see him making on appeal. I do not see that he's made a sufficiency of the evidence arguments as to interstate nexus on money laundering. I think his complaint about the money laundering count in the indictment, I agree with your honor, is fundamentally a complaint that the indictment was some way insufficient, but that's not what he's actually arguing. What he's actually arguing on appeal was that there was a constructive amendment, which is really an entirely different concept. They are different concepts and they certainly, she does certainly, does argue that on I think pages 6, 12, and 14. But do you happen to have her brief, her opening brief in front of you? The benefit of being in my office is that I do, your honor. That's a pretty nice office you've got there according to your background. Don't come knocking in this room when there's not an argument because you may find me working. I guess I'd say the same thing about my office too. Page 12, she says, but the government did not properly allege an interstate nexus to support the money laundering charge. And later on that page, carry over to 13, the indictment did not allege that lender was an FDIC insured bank institution, nor did it allege that the bank from which the bank check was drawn was out of state from Colorado, nor did it allege that the Cadillac alleged to be the subject of the laundering count was manufactured or assembled out of state. None of these references on pages 12 and 13 are talking about a change from what was alleged in the indictment. I thought that the content was really pertaining to the sufficiency of the indictment. I mean, that's how she frames those points. So it's not a test. I'm not asking you to speak off the cuff about those two references, but I will tell you that's what caused me to think, well, maybe it was sufficiency of the indictment. Well, your honor, I think I have two responses to that. I would say my first response, if you go back to page 10, which has the argument heading that everything you've just discussed comes under, it's count three colon expanding the indictments. That's then followed by about three pages of case law on constructive amendments. I agree. I find it confusing that in the midst of a constructive amendment argument, they're trying to argue the sufficiency of the indictment. I think that's a reason to reject that argument. I also think they didn't argue the sufficiency of the indictment below. I mean, they argued the sufficiency of the trial evidence, but not sufficiency of the indictment. They never raised a challenge to the indictment itself. And so that too would be waived. Okay. I mean, and as this discussion demonstrates, even what counsel has proposed happened here would not have been a constructive amendment. A constructive amendment occurs when the indictment alleges one set of facts and the evidence at trial and in the government's closing shows an alternative set of facts that may have been the basis for the jury to convict. That's just not even what they're claiming happened here. This is an argument, as Chief Judge Holmes noted, about a claim that maybe the indictment needed to define a statutory term that it used. And that's just, it wasn't raised below. It's not cognizable under this court's law. So turning to the sufficiency of the evidence on the jurisdictional elements of the wire fraud counts, this argument too, I think is a non-starter. I think it's a non-starter under Weiss, this court's decision in Weiss primarily, where the court said that the government need not prove that the defendant have knowledge that the specific wire transactions charged in the indictment would follow. The government only needs to prove that the defendant could reasonably foresee that his fraudulent activity would result in the use of a wire fraud communications facility. So when it comes to the jurisdictional wire, the government has a great deal of latitude in what wires to charge. We rely below on the Fourth Circuit's decision in the Taylor case, which talks about these jurisdictional nexus elements and how they don't have mens rea requirements at all. Well, nobody's arguing. Yeah, I saw that and I was a little confused about that argument because I don't think she's arguing that there's a mens re requirement. I mean, it, I mean, the whole issue is Pereira, right? Reasonably foreseeability. I don't, I didn't see anything in her briefing, even in district court, to say that there was a mens re requirement for the interstate jurisdictional requirement. So it's all about reasonable foreseeability and I think she acknowledges that. Well, again, I think, Your Honor, we've got two arguments bleeding into one another. We've got the argument that the evidence did not, that government did not sufficiently prove that the wires it charged moved interstate. Non-starter conceded. Then we've got the question, which I don't think the brief squarely raises, but we've heard it this morning, so I'm happy to address it, of whether the evidence suffice to show that he should reasonably have foreseen that some wire, interstate wire, would be used. I would go back to what the court has already discussed. Federal loan program, South Dakota bank, use of an online portal, use of DocuSign. On a sufficiency standard, all of this is is well above the standard necessary for a reason of a rational fact finder to find that he could reasonably have foreseen. Ms. Britton, I think you froze up. Oh, yeah, we lost him. My apologies, Your Honors. It's been a long morning. Apparently my computer is as tired as I am. I believe I was turning to the single scheme, multiple scheme arguments. This, I think, also is foreclosed by Weiss. I mean, Weiss made clear that when the government articulates a scheme to defraud for the purpose of wire fraud, that scheme is not limited to a single act of fraud. The government can charge an overarching scheme encompassing multiple acts of fraud. There's no Redcorn issue here, because ultimately Redcorn turned on whether the wire, whether the only wire that the evidence showed traveled interstate was for the purpose of carrying out the scheme. That was not the case in Redcorn based on the facts there. Here, the wires of the fee files alone absolutely were for the purpose because, as Your Honors noted, no fees, no loan. Also, under PPP loans, there are requirements for how the money is to be used. So how the money is dissipated, whether he, you know, spends it on payroll or spends it as in Redcorn on investments in Florida, that is part of the scheme, whereas it was not in Redcorn. So I think that the single scheme, multiple scheme, constructive amendment arguments also fails. I mean, I'm happy to address the prosecutorial misconduct and the money laundering, final money laundering argument, if the court has any questions. I think we're happy to stand on our briefs on those issues. I don't see any objection to that, so thank you, counsel. And I don't think Ms. Sue had any time remaining. Are there any questions for her? Okay, case is submitted. Thank you very much.